Opinion
BERNSTEIN, J.
Appellant, Russell David Pena, appeals his conviction for violation of former Vehicle Code section 23102, subdivision (a)[1], driving under the influence of intoxicating liquor. Appellant contends the trial court erred in refusing his preferred jury instruction regarding appellant’s theory of his defense. That theory was predicated on the presumed availability of what is generally termed the defense of duress.[2] We hold that the defense was indeed available to appellant, and that the evidence adduced at trial mandated a jury instruction on the subject. Accordingly, we reverse the judgment of conviction.
Facts
On November 5, 1981, appellant was charged by complaint with violations of former Vehicle Code sections 23102, subdivision (a)[3] (count I) and 12500, subdivision (a)[4] (failure to have driver’s license, count II) and Health *Supp. 18 and Safety Code section 11357, subdivision (b)[5] (possession of less than one ounce of marijuana, count III). Counts II and III were subsequently dismissed on motion of the People pursuant to Penal Code section 1385. Appellant was tried by jury on count I; a mistrial was declared on May 25, 1982, when the jury reported itself to be hopelessly deadlocked. The engrossed settled statement on appeal states that: “[djuring deliberations (following appellant’s first trial), the jurors requested instruction on the issue of the defense of justification, ...” and were instructed by the court that it was not available as a defense to the charge.
Appellant’s second jury trial commenced on October 5, 1982. The difficulties experienced by the second jury are reflected in the municipal court docket:[6]
On October 29, 1982, the court sentenced appellant to one year in the county jail.[7]
*Supp. 19 The evidence presented at appellant’s trial was essentially undisputed. Los Angeles County Sheriff’s Deputy Frank Webb testified that he first encountered appellant at approximately 4 a.m. on November 1, 1981. Webb, on patrol in Pico Rivera, observed appellant and Sara Marrufo, appellant’s girlfriend, asleep in a parked car.[8] Webb stated that “due to the late hour,” he decided to investigate the situation. He exited his patrol vehicle and approached the parked car, at which time he stated that he smelled alcohol. Webb then ordered the occupants, appellant and Sara, to exit their vehicle and demanded to see written identification. Both parties complied. Following this, Webb undertook a search of the “suspects” assertedly to ascertain if either of them were in possession of “weapons.” Sara, at the time she was subjected to Deputy Webb’s “weapons search,” was dressed in a somewhat unusual manner. She was wearing a long fur coat and, according to the engrossed statement, “was semi-nude thereunder, wearing only a very brief see-through teddy nightgown” (Sara testified that she and appellant had attended a Halloween costume party earlier in the evening, and that her costume was supposed to be that of a “flasher”). Webb ordered Sara to open her coat, which she did very briefly. Webb thereupon ordered her to again open her coat and to keep it open. Deputy Webb then examined Sara’s body with his flashlight. Following this examination, the deputy turned Sara around and pulled her coat up from the rear and continued his examination with the flashlight.
During his interrogation and search of appellant and Sara Marrufo, Deputy Webb ascertained the following:
1. The vehicle in which appellant and his girlfriend had been sleeping was registered to Sara’s sister;
2. Appellant lived “about one block” from the location of the events above described;
3. Sara lived about three miles from the location;
4. Sara’s identification showed her to be 20 years of age.
Deputy Webb concluded the encounter by ordering Sara to enter his vehicle inasmuch as the deputy had decided to take Sara home. Webb’s only *Supp. 20 asserted reason for this action was that it was for Sara’s “protection.”[9] Webb drove from the scene with Sara in tow, leaving appellant in possession of Sara’s sister’s vehicle.
Appellant testified that he followed Webb and Sara in the sister’s car. His reason for doing so was his fear for the physical safety of his girlfriend. Appellant had observed Webb’s earlier weapons search of Sara; it is at this point the only conflict in the evidence develops. Deputy Webb testified that he drove Sara directly home and only after this, while “exiting Sara Marrufo’s doorway,” did he observe “an unusual black shadow” which proved to be appellant. Appellant was sitting in the vehicle earlier described, with the motor running. Recalling the alcohol odor at the scene of his original encounter with appellant and Sara, Webb felt that appellant had driven to his current location while under the influence of alcohol. He ordered appellant out of the vehicle and, according to Webb, thereupon administered field sobriety tests which appellant failed. Webb then arrested appellant. Subsequently, appellant took an “intoxilyzer” (breath) test which showed appellant’s blood alcohol level to be approximately .15.
However, according to Sara, Webb stopped his car “by some railroad tracks”; at that point, Webb observed appellant to be following them. Webb stated to Sara that appellant “would be made sorry” for following them. Webb then started his vehicle up again and drove to Sara’s residence.
Appellant testified concerning his arrest by Webb as follows: After he was ordered out of the car in which he had followed Webb and Sara, appellant was immediately arrested and handcuffed by Webb. Appellant asserted that no field sobriety tests were administered to him by Webb, although he admitted to Webb that he had consumed several beers at the Halloween party he had earlier attended with Sara.
At both trials, appellant requested that the following instructions be given to the jury: “Evidence has been received to the effect that the reason defendant, Russell Pena, drove the car was because he believed that Sara Marrufo was in physical danger.
“You are hereby instructed that if you find that it has been established by a preponderance of the evidence that the defendant had a good faith belief that Sara Marrufo might be in physical danger, and drove the car for her protection or to render possible aid, then you may acquit him based on this defense.”
*Supp. 21 The trial court not only refused appellant’s tendered instruction, but further instructed the jury, upon the panel’s inquiry during its deliberations, that the defense of “justification” was in fact no defense to the charge.
The sole question on appeal is whether the trial court committed reversible error in refusing to instruct the jury, either by way of appellant’s tendered instruction or a similar, court fashioned charge, regarding the applicability of the defense of duress.

Upon Proper Evidentiary Showing the Defense of Duress Is Available to Any Criminal Charge Other Than a Capital Offense

The United States Supreme Court has recently had occasion to discuss the defenses of duress and necessity in the context of a prosecution for escape from lawful confinement. In United States v. Bailey (1980) 444 U.S. 394 [62 L.Ed.2d 575, 100 S.Ct. 624], the high court observed as follows: “Common law historically distinguished between the defenses of duress and necessity. Duress was said to excuse criminal conduct where the actor was under an unlawful threat of imminent death or serious bodily injury, which threat caused the actor to engage in conduct violating the literal terms of the criminal law. While the defense of duress covered the situation where coercion had its source in the actions of other human beings, the defense of necessity, or choice of evils, traditionally covered the situation where physical forces beyond the actor’s control rendered illegal conduct the lesser of two evils. Thus, where A destroyed a dike because B threatened to kill him if he did not, A would argue that he acted under duress, whereas if A destroyed the dike in order to protect more valuable property from flooding, A could claim the defense of necessity. See Generally LaFave and Scott 374-384.” (444 U.S. at p. 409 [62 L.Ed.2d at p. 590].)
Although California law regarding the “justification” defenses (i.e., “duress,” “necessity,” “compulsion,” etc., see fn. 2, ante) appears sparse in comparison to that of most American jurisdictions, there nonetheless exist several Court of Appeal decisions which provide some guidance as to the parameters of those defenses—most recently the court in People v. Patrick (1981) 126 Cal.App.3d 952 [179 Cal.Rptr. 276], noted that: “[Although the exact confines of the necessity defense remain clouded, a well-established central element involves the emergency nature of the situation, i.e., the imminence of the greater harm which the illegal act seeks to prevent. (See State v. Johnson (1971) 289 Minn. 196 [183 N.W.2d 541, 543, 45 A.L.R.3d 1432].) The commission of a crime cannot be countenanced where there exists the possibility of some alternate means to alleviate the threatened greater harm.” (126 Cal.App.3d at p. 960.)
*Supp. 22 In the leading California case regarding the applicability of the duress defense to a charge of prison escape, People v. Lovercamp (1974) 43 Cal.App.3d 823 [118 Cal.Rptr. 110, 69 A.L.R.3d 668], the court fashioned a five part judicial test for determining the availability of the defense. In such cases, the Lovercamp court observed that it was not formulating a new rule of law, but rather was applying “rules long ago established in a manner which effects fundamental justice.” (Id., at p. 827.) In People v. Graham (1976) 57 Cal.App.3d 238 [129 Cal.Rptr. 31], it was held that the burden of proof in cases in which duress was asserted by a defendant, required only that the defendant “raise a reasonable doubt that he had acted in the exercise of his free will.” (Id., at p. 240.)
Two issues of apparent first impression in this jurisdiction must be addressed before disposition of the instant appeal can be effected:
(1) Is the duress/necessity defense available to a defendant charged with misdemeanor driving under the influence?
(2) Is the duress/necessity defense available to a defendant who .commits an unlawful act in an effort to prevent imminent harm to a third party?
With respect to the first question, it appears settled that the duress defense is available to a defendant charged with any crime except one which involves the taking of the life of an innocent person. (15 Am.Jur., Criminal Law, § 318, p. 16; also see annot., Coercion, Compulsion, or Duress as Defense to Criminal Prosecution (1955) 40 A.L.R.2d 908.) Typical case authority for this proposition is represented by holdings such as the following: “It is established by the great weight of authority that although coercion does not excuse taking the life of an innocent person, yet it does excuse in all lesser crimes.” (State v. St. Clair (Mo. 1953) 262 S.W.2d 25, 27 [40 A.L.R.2d 903].) “We hold that duress is an affirmative defense to a crime other than murder, ...” (State v. Toscano (1977) 74 N.J. 421 [378 A.2d 755, 756].) The logic which compels the availability of such defenses is described in Frasher v. State (1970) 8 Md.App. 439 [260 A.2d 656, 661]: “It is essential to a crime that the defendant committed a voluntary act. . . . The voluntary requirement of the criminal act relates directly to compulsion; it is a defense as to all crimes except taking the life of an innocent person that the defendant acted under a compelling force of coercion or duress. 1 Wharton’s Criminal Law (Anderson) § 123, p. 261. The compulsion may be by necessity, that is duress arising from circumstances, or by the application of duress on the defendant by another person.”[10]
*Supp. 23 Thus, we hold that the defense of duress, is available, presuming other requisites of such a defense are satisfied, where a defendant is charged with the violation of Vehicle Code section 23152, subdivision (a).

The Duress Defense Is Applicable to Situations in Which the Threatened Harm Is to Persons Other Than the Defendant

It appears that no California case has directly addressed the question of whether the duress defense is available in situations wherein the coercive circumstances arise from threatened harm not to the defendant personally, but to some party other than the accused. The classic example is that of a bank teller whose child has been kidnaped. The kidnapers order the teller to use his position of trust at the bank to embezzle money for the kidnapers. The teller is informed that his child will be killed if he does not comply with the demands. The teller himself is not threatened with bodily harm. Would an embezzlement under such circumstances constitute a crime? (See Conde, Necessity Defined: A New Role in the Criminal Defense System (1981) 29 UCLA L.Rev. 409, 438-439.)
It appears that virtually every jurisdiction in which the issue has been settled permits threats to third parties to satisfy the requisite coercive circumstance requirement so as to bring the duress defense into play. Perhaps the best articulation of the rationale for permitting threats to persons other than the defendant to allow invocation of these defenses, appears in a Massachusetts case, Commonwealth v. Martin (1976) 369 Mass. 640 [341 N.E.2d 885, 891-892]: “Whatever the precise precedents, it is hardly conceivable that the law of the Commonwealth, or, indeed, of any jurisdiction [fn. omitted], should mark as criminal those who intervene forcibly to protect others; for the law to do so would aggravate the fears which lead to the alienation of people from one another, an alienation symbolized for our time by the notorious Genovese incident. [Fn. omitted.] To the fear of “involvement” and of injury to oneself if one answered a call for help would be added the fear of possible criminal prosecution. [Fn. omitted.]”
The Martin court observed that some European countries have passed laws making it a criminal offense not to render aid in certain circumstances: “It is instructive that the laws of some countries in Continental Europe *Supp. 24 denounce as a crime the failure to render help in given circumstances. See J. P. Dawson, Negotiorum Gestio; The Altruistic Intermeddler, 74 Harv.L. Rev. 817, 1073, 1101-1114 (1961). Thus, art. 330c of the West German Criminal Code, as amended in 1953, provides (translation by Professor Dawson): ‘Whoever does not render help in cases of accident, common danger or necessity although help is required and under the circumstances is exactable, and in particular is possible without danger of serious injury to himself and without violation of other important [wichtige] duties, will be punished by imprisonment up to one year or by fine. ’ Id., at 1104-1105.” (Commonwealth v. Martin, supra, 341 N.E.2d at p. 891, fn. 12.)
In the case at bench, the People contend that Penal Code section 26[11] restricts the application of duress type defenses to cases in which the defendant’s person is the object of coercive threats of bodily harm. The People’s argument cannot withstand scrutiny. To begin, nothing in the language of section 26 can be construed as limiting the applicability of the duress-necessity defenses to the circumstances therein described. The section merely enumerates the classes of persons who, under the circumstances contemplated by the statute, are incapable of committing acts which constitute crimes. Nothing in the statute can be read to require the conclusion that a person not so enumerated, i.e., a person who is capable of committing a crime, has in fact committed one by his action in a given case. Indeed, other sections of the Penal Code explicitly authorize, under certain circumstances, the commission of acts which ordinarily would constitute crimes. In particular, we refer to Penal Code sections 692-694:
“Lawful resistance to the commission of a public offense may be made:
1. By the party about to be injured;
2. By other parties.” (Pen. Code, § 692.)
*Supp. 25 “Resistance sufficient to prevent the offense may be made by the party about to be injured:
1. To prevent an offense against his person, or his family, or some member thereof.
2. To prevent an illegal attempt by force to take or injure property in his lawful possession.” (Pen. Code, § 693.)
“Any other person, in aid or defense of the person about to be injured, may make resistance sufficient to prevent the offense.” (Pen. Code, § 694.)
Case law construing the above quoted sections of the Penal Code uniformly holds that it is not necessary that the threatened harm be actual, only that it reasonably appear so: “Justification does not depend on the existence of actual danger but on appearance. [Citations.]” (People v. Collins (1961) 189 Cal.App.2d 575, 588 [11 Cal.Rptr. 504]. See, also, People v. McKee (1968) 265 Cal.App.2d 53, 61 [71 Cal.Rptr. 26]; People v. Jackson (1965) 233 Cal.App.2d 639, 641-643 [43 Cal.Rptr. 817].)
We hold that a defense of duress may properly be predicated upon threats of harm to persons other than the accused.

Elements of the Duress Defense

The following requirements have traditionally been held to be prerequisites to the establishment of the defense of justification/duress:
1. The act charged as criminal must have been done to prevent a significant evil;[12]
2. There must have been no adequate alternative to the commission of the act;[13]
3. The harm caused by the act must not be disproportionate to the harm avoided;
4. The accused must entertain a good-faith belief that his act was necessary to prevent the greater harm;[14]
*Supp. 26 5. Such belief must be objectively reasonable under all the circumstances; and
6. The accused must not have substantially contributed to the creation of the emergency.
These determinations are for the trier of fact.
We recognize that, under the requirements listed above there is no suggestion that the harm sought to be avoided be that of death or great bodily injury. Penal Code section 26, subdivision Six provides that persons who commit acts (other than capital offenses) otherwise constituting crimes, while in reasonable fear for their lives should they refuse to commit the act, cannot be held criminally liable. As we stated earlier, Penal Code section 26, subdivision Six is not coextensive with the parameters of the duress defense. Indeed it is clear that this subdivision merely addresses itself to one particular circumstance within the general requirement that the charged act must not cause harm disproportionate to the harm avoided. Under the circumstances contemplated by section 26, subdivision Six, the harm sought to be avoided is the loss of life of the actor. Since no act undertaken by the threatened party in such circumstances (other than the commission of a capital offense) would cause a harm disproportionate to the harm to be avoided, it is clear that the subdivision is merely descriptive of one set of possible circumstances falling within the ambit of the duress defense. However, as we have pointed out, the defense of duress is not limited to situations wherein the accused acted in reasonable fear of his life. Other sections of the Penal Code (i.e., §§ 692, 693, 694, supra) explicitly permit the commission of acts otherwise criminal, under circumstances where the actor need not be in fear of his life to be able to avail himself of the duress defense. Under the “disproportionate harms” requirement, it is plain that as the harm sought to be avoided decreases in seriousness the duress defense will excuse fewer and fewer acts undertaken to avoid that harm.[15]
Lastly, with respect to the oft-cited “imminence” requirement of the defense, it is apparent that this requirement is included within the more general “no alternative” requirement. Obviously, the more imminent the peril, the less likely the existence of an alternative course of action. (See, also, State v. Toscano, supra, 378 A.2d at pp. 762-765.)

Appellant Was Entitled to an Instruction on the Defense of Duress.

We now evaluate the merits of the instant appeal in light of the foregoing legal principles. Appellant would be entitled to an acquittal of the *Supp. 27 charge against him, notwithstanding the fact of his operation of a motor vehicle while legally intoxicated, if he could convince the jury of the truth of the following:
(1) That he held a genuine belief that Sara Marrufo was in danger of assault by or through Deputy Webb;
(2) That appellant’s good faith belief was objectively reasonable under the totality of the circumstances;
(3) That appellant operated his vehicle in obedience to his fear for Sara’s safety and not for any other purpose;
(4) That appellant had no opportunity to engage alternative legal means of protecting Sara from the danger he believed she faced;
(5) That appellant was not substantially at fault in the creation of the emergency situation which he claims justifies his action in driving while intoxicated.
We observe that the requirement that appellant’s fear be an objectively reasonable one does not require that appellant be in fact correct in his assessment of the situation. Rather, as in any situation where a defendant claims as his defense that the charged acts were justified as having been undertaken in response to some emergency circumstance (i.e., self-defense), the defendant may rely on what he reasonably believes to be true. Whether appellant, in the instant case, had a reasonable belief that Sara was in danger from Deputy Webb is a question of fact. That Webb seemed clearly to be an on-duty police officer may be a factor to consider in assessing the reasonableness of defendant’s fear, but it is certainly not the only such factor.[16] Other considerations which the jury could properly weigh include the credibility of Deputy Webb’s asserted reason for taking Sara from the scene against her apparent wishes, the reasonableness or unreasonableness of Webb’s detention and search of appellant and Sara and the character of his search of Sara in particular.
We note that in appellant’s first trial the jury, during its deliberations, returned to the courtroom and requested from the court instructions on the “defense of justification.” The court advised the jury that the defense of *Supp. 28 justification was not available as a defense to the charge. The first jury was unable to reach a verdict. At the second trial, we know from the docket, that the jury experienced considerable difficulty in dealing with the instructions. We also know that at both trials there was a request from the appellant for a specific instruction on the defense of duress and that the instruction was refused.[17] In view of the fact that duress was appellant’s only defense, it was error for the trial court to refuse to instruct the jury regarding the availability of this defense.
Conclusion
We hold that the defense of justification was available to the appellant herein and the failure to so instruct the jury constituted prejudicial error. Accordingly, the judgment is reversed.
Foster, P. J., and Cooperman, J., concurred.

Vehicle Code section 23102, subdivision (a) was renumbered section 23152, subdivision (a) in 1981 (Stats. 1981, ch. 940, §§ 12, 33).

In this opinion, “duress" is used interchangeably with terms such as “coercion,” “compulsion,” “necessity” or “justification.” Although there are some distinctions, they are not material for purposes of this opinion. For a discussion of these distinctions see Conde, Necessity Defined: A New Role in the Criminal Defense System (1981) 29 UCLA L.Rev. 409, 427-432; Berry, Jr., The Mysterious Defense of Necessity (1979) 54 State Bar J. 384.

Vehicle Code section 23102, subdivision (a) as it read on November 5, 1981, provided as follows: “(a) It is unlawful for any person who is under the influence of intoxicating liquor, or under the combined influence of intoxicating liquor and any drug, to drive a vehicle upon any highway.”

Section 12500, subdivision (a) provides: “(a) No person shall drive a motor vehicle upon a highway unless he then holds a driver’s license issued under this code, except such persons as are expressly exempted under this code.”

Section 11357, subdivision (b) provides: “(b) Except as authorized by law, every person who possesses not more than one avoirdupois ounce of marijuana, other than concentrated cannabis, is guilty of a misdemeanor and shall be punished by a fine of not more than one hundred dollars ($100).”

“Court Instructs Jury: They Were Sworn:
Jury retires to deliberate at 3:05 p.m. Jury returns to courtroom at 4:15 p.m. for rereading of the jury instructions.
4:17 p.m. jury retires to deliberate further.
Jury returns to courtroom at 4:38 p.m. for rereading of jury instructions.
4:39 p.m. jury retires to deliberate further.
Jury returns to courtroom at 4:50 p.m.,
‘We the jury in the above-entitled cause find the defendant guilty of the offense charged to wit 23102(a) V.C. signed Foreman.’ ”

Although appellant does not challenge the validity of his sentence, we are constrained to point out, for guidance of the parties in the event of a retrial, that the sentence is of dubious validity.
The trial court pronounced sentence in apparent reliance upon appellant’s “admission” of three prior convictions for violations of (former) Vehicle Code section 23102, subdivision (a). However, the complaint in the instant case (M 147948, Whittier Mun. Ct.) establishes that each of the prior offenses alleged occurred more than five years before the date of the “offense” in the instant matter. Specifically the complaint alleges as follows:
Case No. M 92945 M 106902 M 116056
Municipal Court El Monte Whittier Whittier
Date of Offense 9-18-74 2-7-75 Feb., 1976
Date of Conviction 2-7-75 1- 27-76 2- 22-77
In the instant case, the operative statutes specifying permissible punishment for driving under the influence are former Vehicle Code section 23102, subdivisions (c) and (d). These subdivisions provided in pertinent part:
“(c) Any person convicted under this section shall be punished upon a first conviction by imprisonment in the county jail not less than 48 hours nor more than six months or by a fine of not less than three hundred fifty-five dollars ($355) nor more than five hundred dollars ($500) or by both such fine and imprisonment.
“(d) Any person convicted under this section of an offense which occurred within five *Supp. 19 years of the date of a prior offense which resulted in a conviction of an offense under this section or section 23105 shall be punished by imprisonment in the county jail for not less than 48 hours nor more than one year and by a fine of not less than three hundred fifty-five dollars ($355) nor more than one thousand dollars ($1,000).”
Thus, it plainly appears that appellant could not be sentenced to a jail term longer than the six months maximum specified in subdivision (c), above.

It was stipulated at trial that the car was parked on private property.

The record is devoid of any suggestion that Deputy Webb possessed the legal authority to take Sara home, or anywhere else, against her wishes.

Two cases, both from Texas, specifically deal with the applicability of the justification defenses to prosecutions for driving while intoxicated. These cases, Bush v. State *Supp. 23 (Tex.Ct.Appeals 1981) 624 S.W.2d 377 and Duson v. State (Tex.Crim. 1977) 559 S.W.2d 807—recognize the applicability of such defenses to the charge of driving under the influence (although both cases held that the necessary elements of the proffered defenses were not factually established). (See also, Browning v. State (1943) 31 Ala.App. 137 [13 So.2d 54] [defense of compulsion held to excuse crime of reckless driving]; State v. Ragland (1967) 4 Conn.Cir. 424 [233 A.2d 698] [illegal parking].)

Penal Code section 26 provides:
“All persons are capable of committing crimes except those belonging to the following classes:
“One—Children under the age of 14, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness.
“Two—Idiots.
“Three—Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent.
“Four—Persons who committed the act charged without being conscious thereof.
“Five—Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence.
“Six—Persons (unless the crime be punishable with death) who committed the act or made the omission charged under threats or menaces sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused.”

See, e.g., Cleveland v. Municipality of Anchorage (Alaska 1981) 631 P.2d 1073, 1078.

See, also, United States v. Bailey, supra, (duress and necessity) “Under any definition of these defenses one principle remains constant: If there was a reasonable, legal alternative to violating the law, ‘a chance both to refuse to do the criminal act and also to avoid the threatened harm,’ the defenses will fail.” (444 U.S. at p. 410 [62 L.Ed.2d at p. 591].)

People v. Patrick, supra, 126 Cal.App.3d at page 962.

This is the reason that the justification defenses are sometimes referred to as the “choice of evils” defense.

Police officers, on duty or otherwise, have been known to commit crimes. Further, recent events demonstrate the possibility that police officers may be impersonated. Thus, we cannot hold that Deputy Webb’s status as a law enforcement officer required, as a matter of law, that appellant be convinced of Webb’s benign intention toward Sara.

The instruction requested by appellant was defective in at least one particular, i.e., it omitted the requirement that defendant’s fears for Sara be objectively reasonable. However, that does not relieve the trial court of its duty to fashion a legally adequate instruction in response to appellant’s request.
“The trial judge was not required to adopt the language suggested by a defendant in the Court’s instructions to the jury; however, when a theory of defense finds some support in the evidence and in the law, a defendant is entitled to some mention of that theory in the instructions. United States v. Swallow, 511 F.2d 514 (10th Cir. 1975). Even when the supporting evidence is weak or of doubtful credibility its presence requires an instruction on the theory of defense. Tatum v. United States, 88 U.S.App.D.C. 386, 190 F.2d 612 (1951).” (United States v. Garner (6th Cir. 1976) 529 F.2d 962, 970. See, also, People v. Sedeno (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913].)