90 Cal.Rptr.2d 207 (1999)
76 Cal.App.4th 264
David L. FOSTER, Jr., Plaintiff and Respondent,
v.
Ed SNYDER, as Acting Director, etc., Defendant and Appellant.
No. E023610.
Court of Appeal, Fourth District, Division Two.
November 16, 1999.
*208 Bill Lockyer, Attorney General, Martin H. Milas, Senior Assistant Attorney General, Sylvia M. Diaz, Supervising Deputy Attorney General, and Judith R. Seligman, Deputy Attorney General, for Defendant and Appellant.
Luis Michael Bustillos, Encinitas, for Plaintiff and Respondent.

OPINION
GAUT, J.

1. Introduction

The Department of Motor Vehicles (DMV) appeals the Riverside County Superior Court's judgment granting a petition for writ of administrative mandate in favor of plaintiff, David L. Foster, Jr. The judgment prohibited the DMV from suspending the driver's license of plaintiff, who was under the age of 21 with a blood alcohol concentration (BAC) in excess of 0.01 percent when he drove an automobile. On appeal, the DMV first contends the trial court erroneously found the defense of duress applicable to an administrative per se[1] proceeding. Second, the DMV contends that, even if the defense applies in this non-criminal context, the trial court erred in finding the evidence sufficient to support all the elements of duress.
In concluding that duress defense does not apply in the administrative per se proceeding *209 conducted to review the suspension of plaintiffs driver's license, we reverse the trial court's grant of plaintiffs petition for writ of administrative mandate. In so holding, we need not address the DMV's second contention.

2. Factual and Procedural History

On October 4, 1997, Sergeant Knoteck observed plaintiff driving at excessive speeds (Veh.Code, § 22350[2]) and failing to stop at a limit line (Veh.Code, § 22450, subd. (a)). After detaining plaintiff for these violations, Sergeant Knoteck discovered, and plaintiff admitted, he recently consumed alcohol. A preliminary alcohol screening test revealed a BAC of .132 percent on the first test and .141 percent on the second test. Following his arrest for driving under the influence (Veh.Code, § 23136, subd. (a)), plaintiff submitted to a chemical test by using a breath test machine. The chemical test revealed a BAC of .12 percent and .10 percent. Officer Penneau confiscated plaintiffs driver's license and issued an "Under Age 21 Administrative Per Se Suspension/Revocation Order and Temporary Driver License."
Plaintiff requested, and the DMV held, an administrative per se hearing on January 27, 1998. At the hearing, plaintiff testified that on October 4th, he was at Jason Palmer's house, where an unknown guest threatened him with a knife or some kind of sharp object. When plaintiff attempted to leave the house, the unknown guest followed him outside. After a couple of the others present at the house calmed the unknown guest, they went back inside the house. Later, the unknown guest attacked plaintiff again, causing plaintiff to leave the house, get into his car, and drive away.
On January 28, 1998, the DMV issued a notice of findings and decision upholding the one-year suspension of plaintiffs driver's license. In response to plaintiffs request for a review of the DMV's decision, the DMV issued a notice of decision of departmental review upholding the suspension.
On February 27, 1998, plaintiff filed a petition for writ of administrative mandamus with a request for an immediate stay of the suspension. The court granted plaintiffs petition.

3. Discussion

The DMV argues the equitable defense of duress is inapplicable in an administrative per se hearing conducted to review the suspension of plaintiffs driver's license. Plaintiff, however, contends that equitable principles, including the duress defense, apply to all areas of the law. Based on our analysis below, we conclude that in the context of an administrative per se hearing, while equity may apply, defenses including duress do not.
On appellate review, the superior court's factual findings are upheld if supported by substantial evidence. (Santos v. Department of Motor Vehicles (1992) 5 Cal.App.4th 537, 545, 7 Cal.Rptr.2d 10.) Pure questions of law, however, are reviewed de novo. (Johanson v. Department of Motor Vehicles (1995) 36 Cal.App.4th 1209, 1217, 43 Cal.Rptr.2d 42, citing Smith v. Department of Motor Vehicles (1969) 1 Cal.App.3d 499, 503, 81 Cal.Rptr. 800.)
Preliminarily, we note that equitable principles are not applicable when the relevant statutory scheme is unambiguous and comprehensive. (Timberline, Inc. v. Jaisinghani (1997) 54 Cal.App.4th 1361, 1368, fn. 5, 64 Cal.Rptr.2d 4.) Further, equity cannot accomplish indirectly that which the law or its clear policy prohibits directly. (Ibid.)
We begin our analysis by discussing the availability of equitable principles in an administrative per se hearing. Citing Lentz v. McMahon (1989) 49 Cal.3d 393, 405, 261 Cal.Rptr. 310, 777 P.2d 83, plaintiff argues that equity applies to all administrative *210 proceedings and therefore applies in this context. In Lentz, the court held that a recipient of welfare benefits may assert the equitable estoppel defense in the context of an administrative hearing of the Department of Social Services (DSS). (Id., at p. 407, 261 Cal.Rptr. 310, 777 P.2d 83.) The court further held that the statutory scheme contemplates the application of the equitable estoppel defense. (Id., at p. 407, 261 Cal.Rptr. 310, 777 P.2d 83.) The holding in Lentz does not stand for the all-encompassing conclusion that equitable principles apply to all administrative proceedings.
In Curtin v. Department of Motor Vehicles (1981) 123 Cal.App.3d 481, 176 Cal. Rptr. 690, the court discussed equitable principles in the context of an administrative per se proceeding conducted to review the suspension of an individual's driver's license. There, the plaintiff had his driver's license suspended for driving under the influence of alcohol in violation of section 13353. The plaintiff sought equitable relief based on a previous incident, in which the state erroneously suspended his driver's license. Before the DMV set aside the previous suspension, it had already been in effect for five months. The superior court, while finding no error in the DMV's decision as to the current suspension, ordered equitable relief, directing the DMV to give the plaintiff five months' credit. In reviewing the superior court's ruling, the appellate court reversed based on the lower court's failure to consider the possibility that the plaintiff was also serving a concurrent six-month suspension. (Curtin, supra, at p. 486, 176 Cal.Rptr. 690.) The appellate court, however, did not find fault with the superior court's application of equitable considerations. (Id., at pp. 485-486, 176 Cal.Rptr. 690.)
The court reasoned that, "[o]ne's entitlement to a writ of mandate is largely controlled by equitable principles. [Citations.] The same equitable principles will apply to administrative mandamus, as here, under Code of Civil Procedure section 1094.5. [Citations.] ... [¶] It is undeniably true that under any reasonable concept, right and justice would be defeated by the erroneous suspension of [the plaintiffs] driver's license. And it is a basic principle of our jurisprudence, at least in the absence of some transcendent public interest, that equity `"will assert itself in those situations where right and justice would be defeated but for its intervention."' [Citations.]" (Curtin v. Department of Motor Vehicles, supra, 123 Cal.App.3d at p. 485, 176 Cal.Rptr. 690.)
Although the court in Curtin concluded that equitable principles applied to the DMV's administrative proceedings reviewing the suspension of the plaintiffs driver's license, it is not necessary for this court to decide whether equity always applies in such circumstances. Rather, we need only decide whether the equitable defense of duress applies based on the nature of this case and the particular facts and circumstances involved. (See Curtin v. Department of Motor Vehicles, supra, 123 Cal. App.3d at p. 485, 176 Cal.Rptr. 690; Butler v. Holman (1956) 146 Cal.App.2d 22, 26, 303 P.2d 573.)
We look first to the statutory language itself. Section 13353.2 provides, in pertinent part:
"(a) The department shall immediately suspend the privilege of any person to operate a motor vehicle for any one of the following reasons:
".......
"(3) The person was under 21 years of age and had a blood-alcohol concentration of 0.01 percent or greater, as measured by a preliminary alcohol screening test, or other chemical test."
Additionally, pursuant to section 13557, subdivision (b)(2), departmental review of the initial determination under section 13353.2 also requires the DMV to sustain the order of suspension if certain facts are established.[3]
*211 Based on the language of the statute, the DMV has a mandatory, rather than discretionary, duty to suspend an individual's driving privileges. Similar provisions of the administrative per se law also involve a mandatory duty. (See, e.g., Pollack v. Department of Motor Vehicles (1985) 38 Cal.3d 367, 377, 211 Cal.Rptr. 748, 696 P.2d 141 [mandatory duty to suspend license of an individual with two drunk driving convictions within five years]; Baldwin v. Department of Motor Vehicles (1995) 35 Cal.App.4th 1630, 1637, 42 Cal.Rptr.2d 422 [revocation of driver's license for third offense required]; Vary v. Forrest (1988) 201 Cal.App.3d 1506, 1513, 247 Cal.Rptr. 873 [department has duty to revoke an individual's driver's license based on his convictions].)
The DMV's mandatory duty is triggered when the requirements of section 13557, subdivision (b)(2) are satisfied. As plaintiff concedes, the requirements of that provision have been fully satisfied in this case. Two cases cited by the DMV are instructive. In McDonnell v. Department of Motor Vehicles (1975) 45 Cal.App.3d 653, 119 Cal.Rptr. 804, the court addressed whether a driver's ignorance of his abnormal susceptibility to alcohol constitutes an excuse for refusing to submit to a chemical test. (Id., at pp. 661-662, 119 Cal.Rptr. 804.) The court held that the defense of impaired judgment was not available under the circumstances. (Id., at p. 663, 119 Cal.Rptr. 804.) Rather, the conduct that triggers suspension of an individual's driver's license is the refusal itself. (Ibid.) In arriving at this conclusion, the court stated that, "[t]he legislative history of the implied consent statute and cases heretofore discussed indicate that the statute is remedial in nature and aimed at reducing the hazards of drunken driving on the highways of California. It was designed to secure the civil cooperation of all persons privileged to drive in providing objective scientific evidence of intoxication (or sobriety) when the privilege is being exercised. The sanction of suspension when such cooperation is refused is not a criminal penalty and does not depend upon a subsequent conviction of driving while under the influence. Hearings under the statute are civil and not criminal in nature. [Citation.]" (Id., at p. 662, 119 Cal.Rptr. 804, original italics, citing Funke v. Department of Motor Vehicles (1969) 1 Cal.App.3d 449, 454-455, 81 Cal.Rptr. 662.)
The court continued, "[b]eing civil in nature, mens rea concepts of the criminal law are not applicable to proceedings under the statute unless the Legislature sees fit to amend the statute in some manner such as by adding `willful and knowing' to the word `refusal' therein." (McDonnell v. Department of Motor Vehicles, supra, 45 Cal.App.3d at p. 662, 119 Cal.Rptr. 804.) Thus, "[a] court should not read into a remedial statute an exception that would impose obstacles to the achievements of its purposes. [Citations.]" (Id., at pp. 662-663, 119 Cal.Rptr. 804.)
In another case involving the refusal to submit to a chemical test, Murphy v. Department *212 of Motor Vehicles (1978) 86 Cal. App.3d 119, 150 Cal.Rptr. 20, the court addressed whether the remedy of suspension should be enforced against an occupational driver who may lose his employment as a result of the suspension. (Id., at p. 120, 150 Cal.Rptr. 20.) The court rejected the driver's contention, stating that the implied consent law, as drafted, does not provide for an occupational driving exception. (Id., at p. 121, 150 Cal.Rptr. 20.) The court noted that "[t]he legislative mandate is clear, unambiguous and unequivocal that the privilege of driving is suspended. There is simply no room in the legislative direction to interpret a distinction in the language between occupational driving and recreational driving. The department was left with no discretion to pick and choose between types of driving purposes." (Id., at p. 121, 150 Cal. Rptr. 20.) The court further noted that the legislative intent of the statute was the uniform application of the suspension remedy. (Ibid.)
Here, plaintiff urges another exception based on the duress defense. The superior court, in relying on People v. Pena (1983) 197 Cal.Rptr. 264, 149 Cal. App.3d Supp. 14, found the defense applicable to this case. The court in Pena, however, held that the defense was available in the defendant's misdemeanor case of driving under the influence of alcohol in violation of current section 23152, subdivision (a). (Pena, supra, at Supp. p. 28, 197 Cal.Rptr. 264.) Aside from the subsequent criticism of the court's expansive and muddled discussion of duress (see People v. Heath (1989) 207 Cal.App.3d 892, 897-899, 901, 255 Cal.Rptr. 120; People v. Garziano (1991) 230 Cal.App.3d 241, 243, 281 Cal.Rptr. 307), Pena clearly involved a criminal proceeding resulting in punishment or a penalty. As mentioned above, suspension of an individual's driver's license is a civil remedy that is not penal in nature. (McDonnell v. Department of Motor Vehicles, supra, 45 Cal.App.3d at p. 662,119 Cal.Rptr. 804.)
Furthermore, duress is a defense negating the element of intent. (People v. Heath, supra, 207 Cal.App.3d at p. 901, 255 Cal.Rptr. 120.) As stated above, intent, an aspect of mens rea, is inapplicable to the civil remedy of suspending a driver's license. (McDonnell v. Department of Motor Vehicles, supra, 45 Cal.App.3d at p. 662, 119 Cal.Rptr. 804.) The civil remedy applies to the actus reus,[4] the fact of the driver's noncompliance.
Additionally, the language of sections 23136, subdivision (a), and 13557, subdivision (b)(2), does not include an intent requirement. As the DMV argues, the Legislature could have provided for the defense of duress by including the terms, "willfully" or "intentionally," before "drive" or "driving" in the language of the statutes. In the absence of such terms, the courts should refrain from circumventing the unambiguous intent of the Legislature to apply uniformly the suspension remedy. (Murphy v. Department of Motor Vehicles, supra, 86 Cal.App.3d at p. 121, 150 Cal.Rptr. 20.)
Therefore, in light of the mandatory duty under sections 13353.2, subdivision (a), and 13557, subdivision (b)(2), to suspend the license of an underage individual who commits the act of driving under the influence of alcohol with a BAC of 0.01 percent, in violation of section 23136, subdivision (a), we hold that the defense of duress does not apply to administrative per se proceedings.
Our analysis does not stop here. In anticipation of plaintiffs response, we must also address whether the defense of necessity applies in this context. Although the court applied the "duress" elements set forth in People v. Pena, supra, 197 Cal.Rptr. 264, 149 Cal.App.3d Supp. at pp. 25-26, the delineated elements are actually *213 elements of the necessity defense, not duress. (People v. Heath, supra, 207 Cal. App.3d at p. 899, 255 Cal.Rptr. 120.) It is unnecessary for our purposes to engage in a lengthy discussion on the distinction between duress and necessity; rather, suffice it to say that while the defense of duress negates the element of intent, the defense of necessity is "founded upon public policy and provides a justification distinct from the elements required to prove the crime. [Citation.]" (Id., at p. 901, 255 Cal.Rptr. 120; accord In re Eichoni (1998) 69 Cal. App.4th 382, 389, 81 Cal.Rptr.2d 535.)
Even in the absence of considerations involving the duress as negating the element of intent, the relevant statutes and their clear policy preclude the application of the necessity defense to administrative per se proceedings. The relevant provisions plainly and fully involve a remedial scheme that does not leave room for the discretionary application of equitable defenses. (See Timberline, Inc. v. Jaisinghani, supra, 54 Cal.App.4th at p. 1368, fn. 5, 64 Cal.Rptr.2d 4.)
In contrast to a criminal prosecution for drunk driving, the administrative remedy involving the suspension of driver's licenses was designed to be a "swift and certain" method of deterring such conduct.[5] (Gikas v. Zolin, supra, 6 Cal.4th 841, 847, 25 Cal.Rptr.2d 500, 863 P.2d 745, citing Bell v. Department of Motor Vehicles (1992) 11 Cal.App.4th 304, 312, 13 Cal.Rptr.2d 830.) "Before it may suspend a person's driving privilege, the Department must make a specific factual determination the person was driving or in physical control of a vehicle while intoxicated (§ 13557). The determination is reviewable at a full administrative hearing (§ 13558). The suspension must be rescinded if the person is acquitted of criminal charges `relating to' this determination of facts (§ 13353.2, subd. (e)). It would be inconsistent with the purpose of this factfinding procedure, and with the intent to suspend the driving privilege of those who are thus found to have been driving under the influence, to rescind the suspension for reasons that have nothing to do with whether the person was in fact driving while intoxicated." (Agresti v. Department of Motor Vehicles (1992) 5 Cal.App.4th 599, 606, 7 Cal. Rptr.2d 353.)
In enacting the administrative per se law, the Legislature did not intend to create a more onerous process, as opposed to the criminal process, of deterring drunk drivers. (See Bell v. Department of Motor Vehicles (1992) 11 Cal.App.4th 304, 312, 13 Cal.Rptr.2d 830.) Rather, as indicated throughout this opinion, the fact of drunk driving alone, as determined by the statutory elements, triggers the mandatory imposition of suspension. No other considerations are relevant to the DMV's factfinding process.
In summary, according to the relevant statutes and their policy considerations, the duress and necessity defenses are inapplicable to the DMVs determination of whether to suspend (§ 13353.2, subd. (a)), or uphold the suspension of (§ 13557, subd. (b)(2)), an individual's driver's license.

4. Disposition

We reverse the superior court's grant of plaintiffs writ of administrative mandate and order the DMV to recover its costs on appeal.
RICHLI, Acting P.J., and WARD, J., concur.
NOTES
[1] The statutory procedure for determining whether to suspend an individual's driving privileges for driving under the influence of alcohol (see Veh.Code, § 13353.2 et seq.) is often referred to as the "administrative per se" law or proceedings. (Lake v. Reed (1997) 16 Cal.4th 448, 454, 65 Cal.Rptr.2d 860, 940 P.2d 311.)
[2] All further statutory references are to the Vehicle Code unless otherwise stated.
[3] Section 13557 provides, in relevant part:

"(2) If the department determines in the review of a determination made under Section 13353.2, by the preponderance of the evidence, all of the following facts, the department shall sustain the order of suspension or revocation, or if the person is under 21 years of age and does not yet have a driver's license, the department shall delay issuance of that license for one year:
"(A) That the peace officer had reasonable cause to believe that the person had been driving a motor vehicle in violation of Section 23136, 23140, 23152, or 23153.
"(B) That the person was placed under arrest or, if the alleged violation was of Section 23136, that the person was lawfully detained.
"(C) That the person was driving a motor vehicle under any of the following circumstances:
"(i) When the person had 0.08 percent or more, by weight, of alcohol in his or her blood.
"(ii) When the person was under the age of 21 years and had 0.05 percent or more, by weight, of alcohol in his or her blood.
"(iii) When the person was under 21 years of age and had a blood-alcohol concentration of 0.01 percent or greater, as measured by a preliminary alcohol screening test, or other chemical test."
[4] "Actus reus" is defined as "the physical aspect of a crime, whereas the mens rea (guilty mind) involves the intent factor." (Black's Law Diet. (6th ed.1990) p. 36, col. 2.)
[5] "The express legislative purposes of the administrative suspension procedure are: (1) to provide safety to persons using the highways by quickly suspending the driving privilege of persons who drive with excessive blood-alcohol levels; (2) to guard against erroneous deprivation by providing a prompt administrative review of the suspension; and (3) to place no restriction on the ability of a prosecutor to pursue related criminal actions. [Citations.]" (Gikas v. Zolin (1993) 6 Cal.4th 841, 847, 25 Cal.Rptr.2d 500, 863 P.2d 745.)