Filed 9/17/14  P. v. Weathers CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LUTHER GENE WEATHERS,<br><br>        Defendant and Appellant. | A139741<br><br>(Lake County<br>Super. Ct. No. CR926292) |

Defendant Luther Gene Weathers appeals from the judgment revoking probation and ordering execution of a five-year sentence.  (Pen. Code,[1] § 1203.2,subd. (a).)  He contends the trial court abused its discretion in revoking probation because his violation was justified and, in any event, "de minimis."  We reject these contentions and affirm the judgment.

## I. BACKGROUND

At the time of his May 2011 arrest, defendant was in possession of a glass smoking pipe, several baggies of methamphetamine, and over $600 in cash.  In August 2011, defendant pleaded no contest to violating Health and Safety Code section 11378, subdivision (a) and admitted a prior felony conviction (§§ 11370.2, subd. (c),11378).  Despite the fact that defendant had suffered two or more prior felony convictions, the court found that unusual circumstances suggested the interests of justice would be best served by granting probation.  (See § 1203, subd. (e)(4).)

---

[1]     All further undesignated statutory references are to the Penal Code.

1

At the June 25, 2012 sentencing hearing,[2] the court granted probation based on the probation department's supplemental report, which specified 22 different conditions. Among the specified conditions, was the requirement that defendant "shall . . . report in writing to the probation officer between the 1st and 10th of each month, on forms provided by the probation officer" (Condition 1).  Defendant was also ordered to "appear at the Lake County Probation Department . . . on the first business day following his release from custody" (Condition 22).  Another condition of probation, was that defendant enter a treatment program as directed by the probation officer (Condition 5). When the court asked defendant if he accepted each of the conditions of his probation, defendant replied, "Yes, sir."

As recommended by the probation department, the trial court ordered defendant to be committed to the Salvation Army's Lytton Springs Treatment Facility.  At the conclusion of the sentencing hearing, the court advised defendant as follows: "Within 24 hours of the time that you're released you're to call the probation officer and make an appointment.  And then within . . . five business days of that call or that release from Lytton Springs, you're to actually contact the [probation officer] face to face."  To which defendant replied, "All right."

At the June 25, 2013 probation violation hearing, Lake County Probation Officer Laverne Trueblood testified that Lytton Springs advised the probation department that defendant had been released from rehabilitation on December 30, 2012.  However, following his release, defendant failed to report to the probation department. Additionally, defendant failed to provide subsequent monthly reports to the probation department.  Trueblood explained that defendant was familiar with the probation reporting requirement as he had been on probation for various periods of time since 1989 and he had been orally advised of the reporting requirement at the sentencing hearing for the current offense.~(RT 13, 15)~  Trueblood further explained that without defendant's

---

[2]     Defendant's waiver of time for sentencing, together with various motions by defendant, plus numerous continuances, account for the approximate year-long gap between plea and sentencing.

initial contact with the probation department following his release, the department was unable to supervise him. Thereafter, the probation department sought to revoke defendant's probation.

Defendant testified that he went directly from jail to Lytton Springs and completed the 180-day program. He knew that after being released from the program that he would be on probation. Defendant explained that he left his paperwork with his wife and they separated while he was at Lytton Springs. When he ultimately reviewed the paperwork two or three weeks after release, he realized that he was already in violation of probation. Defendant further explained that during this time period, he was assisting his disabled sister find a habitable residence and find the right person to help her. Defendant admitted he violated probation. He explained that his "sister was on the streets in a wheelchair" and had been living in a house without water, power, or a working septic system. He further explained that once he made sure his sister was in a safe environment, he turned himself in, stating: "[A]s soon as I got done and got her to where I didn't have to worry about her anymore, I walked into the courtroom and turned myself in so I could deal with this situation so I can get back out there and do what is doing the most good for both of us . . . I ain't got no other excuse. That's what I did and that's where I'm at."

The trial court stated it was "crystal clear that by a preponderance of the evidence" that defendant willfully violated the conditions of his probation. The court stated that although there may have been initial confusion, that once defendant realized he was in violation of probation he "continued to choose to violate." The court stated that this was a "choice he made." The court noted that the sentencing court advised defendant that he was obligated to follow the court's orders.

At the August 12, 2013 sentencing hearing, defendant's sister testified that she was a "complete quadriplegic" and needed his help in moving to a new residence. She also testified that she needed her brother's help for her daily needs, such as getting out of bed, making meals, doing household chores and yard work, and keeping her bills in order.

3

The probation officer's report prepared for the sentencing hearing noted that "defendant has a substantial prior history of unsatisfactory performance on both probation and parole." The report further noted defendant's statements during the probation interview, to wit: "[D]efendant acknowledged he has never done well on probation, mainly because of his substance abuse issues, and stated he would prefer not to be restored to his grant of probation, but would rather serve his time. However, since his incarceration, [] defendant's sister has been evicted from her home, and he would ask the court for a delayed entry into custody to finish his jail term to give him the opportunity to obtain housing for his sister."

According to the probation officer's report, the department had "no objection to the defendant being released from custody and ordered to turn himself in at a later date," should the court be so inclined. Over the prosecution's objection, the trial court released defendant on his own recognizance for two and half weeks so that he could help his sister move.

## II. DISCUSSION

Defendant contends the trial court abused its discretion when it refused to reinstate probation. He acknowledges the trial court's broad sentencing discretion, but argues that his "de minimis violation was excusable, justifiable[,] and necessitated by his moral duty to save his sister." (Original capitalization omitted.) He further contends the court abused its discretion when it made "contradictory findings" by allowing him to be released on his own recognizance to help his sister, while at the same time finding that his probation violation—based on the same necessity to help his sister—was not justified.

Section 1203.2, subdivision (a) provides that "the court may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of his or her supervision . . . regardless whether he or she has been prosecuted for such offenses."

"[A] decision to revoke probation when the defendant fails to comply with its terms rests within the broad discretion of the trial court." (*People v. Covington* (2000) 82

4

Cal.App.4th 1263, 1267.) "Although that discretion is very broad, the court may not act arbitrarily or capriciously; its determination must be based upon the facts before it." (*People v. Buford* (1974) 42 Cal.App.3d 975, 985.) The facts supporting probation revocation need only be proved by a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 441-442.)

On appeal, we will not interfere with the trial court's exercise of discretion " 'when it has considered all facts bearing on the offense and the defendant to be sentenced.' [Citation.]" (*People v. Downey* (2000) 82 Cal.App.4th 899, 909-910.) This is not to say that a reviewing court will never interfere with a trial court's decision not to reinstate probation. Where the record reveals that the defendant's violation was not the result of irresponsible, willful, unlawful or disrespectful behavior, imposition of a prison sentence may be an arbitrary and capricious use of the court's power. (*People v. Zaring* (1992) 8 Cal.App.4th 362, 379.)

In this case, the probation department originally recommended that defendant be sentenced to prison due to his numerous convictions, his prior prison terms and his unsatisfactory performance on both probation and parole. Despite this recommendation, the court granted defendant probation. Defendant had both the reason and the experience, having previously been on probation and parole, to understand that if he did not comply with the terms of probation he would be sent to prison. Yet he failed to comply with one of the most basic terms of his probation, which was to report to the probation department. This fundamental noncompliance was not a de minimis violation. (*Cf. People v. Zaring, supra,* 8 Cal.App.4th at pp. 378-379 [being 22 minutes late to revocation hearing not a willful violation].)

To be sure, defendant had explanations for this failure. According to defendant, he was "moral[ly]" obligated to "save his sister." While the record reflects that defendant's sister was living in deplorable living conditions, nothing suggests that she was in any imminent danger. In this regard, defendant's reliance on cases discussing the defenses of duress and necessity is misplaced. (See *People v. Heath* (1989) 207 Cal.App.3d 892, 901 [duress effective defense only when responding to immediate and

5

imminent danger]; *People v. Lovercamp* (1974) 43 Cal.App.3d 823, 825-827, 830-831 [nonviolent prison escape to avoid sexual assaults justified giving necessity defense instruction].) Further, even if his failure to report in person was somehow excused, defendant fails to suggest how the claimed duress and/or necessity would have prevented him from making initial contact by phone or reporting to the probation officer by mail.

Finally, the trial court did not render contradictory findings by allowing defendant to be released on his own recognizance to help his sister, yet ruling that defendant violated the terms of his probation by doing just that. Rather, the trial court acted well within its broad discretion by allowing defendant to attend to his sister before returning to custody. We cannot fault the trial court for considering all of the facts bearing on the offense. (*People v. Downey, supra,* 82 Cal.App.4th at pp. 909-910.) Defendant's violation was a willful failure to comply with the conditions of his probation and the trial court did not abuse its discretion in revoking probation.

### III. DISPOSITION

Judgment is affirmed.

_____
REARDON, J.

We concur:


_____
RUVOLO, P. J.


_____
RIVERA, J.