Filed 7/27/16  P. v. Wohl CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>KEITH WOHL,<br><br>        Defendant and Appellant. | B264398<br><br>(Los Angeles County<br>Super. Ct. No. SA087274) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Leslie E. Brown, Judge.  Affirmed.

James E. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Corey J. Robins, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Keith Wohl was found guilty by jury verdict of grand theft of personal property. (Pen. Code, § 487, subd. (a).)[1] He argues the jury instruction on aiding and abetting did not inform the jury that a defendant must share the perpetrator's criminal purpose to be found guilty. He also argues that the trial court had a sua sponte duty to modify the pattern instruction on the defense of duress to clarify that fear of imminent serious bodily injury is sufficient to establish the defense. Alternatively, he contends that his counsel rendered ineffective assistance by failing to object to the inadequate jury instructions.

Respondent argues that there was no instructional error, and thus no basis for a claim on inadequate representation.

Finding no instructional error, we affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY

In June 2012, appellant agreed to house sit and care for a dog for his friends Daniel Vanoost and Randy Worden.[2] Appellant decided to have a small party at the victims' residence. Michael McMahon and his partner James Thomas attended. Later, a man they knew as Pablo joined the group. The men used crystal methamphetamine. After some time, Pablo claimed that his bag of drugs had been stolen, and became very agitated. The four men searched for the missing drugs for hours. McMahon was not afraid, but was uncomfortable because it was not Pablo's house, Pablo was searching through the victims' things, and they were trying to find something that "was not entirely legal."[3] Pablo demanded that each man be searched. McMahon did not hear Pablo threaten anyone in his presence. Thomas did not take Pablo's threat to get a gun from his car seriously because Pablo had said that he arrived at the party in a cab. Thomas also heard Pablo threaten to call friends who would help him hurt McMahon, Thomas, and

---

[1]     All statutory references are to this code.

[2]     We sometimes refer to Vanoost and Worden jointly as "victims."

[3]     McMahon and Thomas testified under grants of immunity from prosecution for any narcotics related offenses.

2

appellant. Thomas was concerned by that statement, but the threat was general and the friends Pablo mentioned were not present. No one called 911. The drugs were never found. McMahon and Thomas left between 7:30 and 8:00 a.m. because McMahon had to go to work.

Vanoost and Worden returned home in the early morning hours of June 16, 2012, earlier than expected. Appellant was not present. They walked their dog and then unpacked their car. The house was in disarray. Clothing that was not theirs was strewn all over the house and the kitchen was a wreck. They noticed that the 50 inch television was missing from the master bedroom. It weighed a little over 100 pounds and had a speaker mounted underneath that weighed 30 to 40 pounds, and was 48 inches long by 8 inches high. The center of the television screen was about eight feet off the floor, mounted to the wall. A ladder was required for its installation. To remove the television, a person would have to unhook the latches from the top of the set and lift it off the wall mount. At least two people would be required. The television cost $3,800.

Appellant returned to the house about an hour later, before Vanoost and Worden discovered that some of their property was missing. He seemed shocked and aggravated to see them. When they discovered the television was missing, Vanoost questioned appellant about it. He said it had been stolen. Appellant quickly packed up his clothes, put them into his car, and left the house. Worden texted appellant to return to explain what had happened. Appellant returned at 5:00 that morning. He said while he had friends over, Pablo said something belonging to him went missing. Pablo had threatened to return the same day with a gun and his cousin and harm the dog if he was not paid for the missing item.

Appellant admitted that he helped take the television off the mount and carry it out to Pablo's car. Worden testified that appellant told him he had given Pablo the television in payment for his missing property. Two laptop computers also were missing,[4] as was

---

[4]   Worden testified that while he was still away, he received a text from appellant asking if his computer had tracking software because it was missing. Appellant did not

3

some money and the sheets off the bed. None of the stolen property was returned. Vanoost did not give anyone permission to take the property.

The victims repeatedly asked appellant to file a police report but he refused, saying he did not want to get anyone into trouble. Appellant stormed out and did not respond to further messages from the victims asking him to file a police report. They reported the theft themselves. Appellant later told Thomas that he had seen Pablo on at least two other occasions after that night.

Los Angeles Police Department Detective Damon Hogan was assigned to investigate the theft at the home of Vanoost and Worden. He spoke with appellant by telephone. Appellant admitted that he helped Pablo remove the television from the wall, carry it out to Pablo's car, and load it inside. He said he was intimidated and felt physically threatened by Pablo, of whom he was fearful. He also said that Pablo threatened him with immediate physical harm as the television was being taken down. Appellant told Detective Hogan that Pablo threatened to return with other men and physically harm him. The Los Angeles Police Department had no record of a report of this crime filed by appellant. Eventually appellant admitted that he had seen Pablo a week after the alleged threat, at appellant's home. Garth Olson, a friend of appellant, testified that he went to appellant's home in mid-June 2012. Pablo came in and spent an hour or longer with appellant and Olson. Pablo walked away with appellant's telephone.

Appellant testified in his own defense. He said he volunteered to dog sit for the victims while they were in Chicago. He invited Thomas, McMahon, and Pablo over to the house. He had met Pablo recently through an online site. Pablo brought drugs. The party lasted until 4:15 a.m. when appellant realized that Pablo's bag of drugs was not on the desk where it had been all evening. Pablo became very agitated and threatened everyone. All four men searched for the drugs but nothing was found.

mention anything about the television. Worden did not tell Vanoost at the time because Vanoost was grieving the loss of his father.

After McMahon and Thomas left, Pablo told appellant he had taken a cab to get to the party. He demanded to be compensated for the loss of his drugs by taking the television and computer, "or he would beat [appellant's] ass." Appellant was afraid of Pablo. He asked Pablo what Pablo was going to do after being arrested. Appellant testified that Pablo said, "Come back and beat [appellant's] ass again." Appellant believed that he would receive a severe beating unless he cooperated with Pablo. He testified that Pablo said he would pistol whip all three men and clean the place out when his brother came to pick him up. Pablo jumped on the dresser to unscrew the television after receiving a text from his brother. He almost dropped the television and speaker, which fell into appellant's hands. Pablo told appellant to help him. Appellant testified that Pablo took the television out to his brother's car.[5] He spent 15 minutes trying to talk Pablo out of stealing from the house.

Pablo returned to the house, distracted appellant, took a computer, and left. Appellant was in fear of receiving a severe beating while this was going on. He explained that he did not call the police because the victims were drug dealers who could get into trouble if police officers found drugs in the house. He also feared that he could be in trouble if things were found.

Ten days later, Pablo asked appellant to meet him. Appellant refused. Then Pablo called again while Olson was at the house, and appellant allowed Pablo to come over since he would not be alone. Pablo apologized, but accused appellant of stealing the drugs. Pablo took his phone. After that, appellant could not ask him to return the property because appellant did not have Pablo's number.

Appellant contradicted the victims' version of events. He said he told the victims what had happened, and that they did not confront him and say he had to call the police. Appellant denied telling the victims that he did not want to call the police because he did not want to get anyone in trouble. According to appellant, an officer at the Pacific

---

[5] Later appellant testified that he and Pablo carried the television to the door and set it down. Pablo wrapped the television in a blanket and carried it down the driveway to a car.

Division refused to file a report about the incident on the ground that no crime had been committed.

Appellant was charged with grand theft of personal property in violation of section 487, subdivision (a). He pleaded not guilty. The jury found him guilty as charged. Imposition of sentence was suspended and appellant was placed on formal probation for three years with the requirement that he serve 90 days in county jail and two days of community labor. The court ordered restitution be paid, with the amount to be set at a future hearing. Appellant was ordered to enroll in and complete six months of outpatient drug treatment. He filed a timely appeal.

DISCUSSION

I

Appellant argues that the instruction given on the aiding and abetting theory of guilt was prejudicially incomplete because it did not make clear that appellant had to share Pablo's specific intent to steal from the victims and permanently deprive them of their property. He contends the trial court had a sua sponte duty to so instruct the jury.

"'"'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence.'" [Citation.]" (*People v. Rangel* (2016) 62 Cal.4th 1192, 1223.) We apply the de novo standard of review in assessing whether jury instructions correctly state the law, reviewing the instructions as a whole. (*People v. Posey* (2004) 32 Cal.4th 193, 218; *People v. Mendoza* (1998) 18 Cal.4th 1114, 1134-1135.)

The court gave CALCRIM No. 400, the pattern instruction on aider and abettor liability. This instruction informed the jury that "[a] person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. [¶] A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator." The court also gave CALCRIM No. 401which provided in pertinent part: "To prove that the defendant is guilty of a crime

6

based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. *Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime*; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." (Italics added.)

Appellant argues the instruction omitted the requirement that he had to share Pablo's criminal purpose. He also argues that the evidence demonstrated that he did not share Pablo's purpose of permanently depriving the victims of their property, but instead acted out of duress because of Pablo's threats to harm him. In support of his argument, appellant cites his testimony at trial that he aided Pablo only because he was afraid and believed Pablo's threats, not because he shared Pablo's intent to steal the victims' property.

Appellant asserts that this instructional error violated his right to due process under the federal and state constitutions. Appellant relies on *People v. Balderas* (1985) 41 Cal.3d 144, which addressed whether the defendant's associate was an accomplice. (*Id.* at p. 193.) The Supreme Court held: "An aider and abettor may be an accomplice since he is chargeable as a principal [citation], but we recently affirmed that one is not guilty of aiding and abetting a crime unless he promotes, encourages, or assists the perpetrator *and shares the perpetrator's criminal purpose*. It is not enough that the person charged as an aider and abettor give assistance with *knowledge* of the perpetrator's criminal purpose. (*People v. Beeman* (1984) 35 Cal.3d 547, 556-561.)" (*Id.* at p. 194.) Appellant relies on the italicized language in *People v. Balderas* to argue that "A person can even assist a principal, as occurred in this case, and know of the principle's [*sic*] criminal intent, and still not be an aider and abettor."

7

Appellant also relies on *People v. McCoy* (2001) 25 Cal.4th 1111, and *People v. Nero* (2010) 181 Cal.App.4th 504, to support his argument that an aider and abettor's mens rea is personal and may be different than the direct perpetrator's. ~(AOB 12-14, 17)~ The cited cases concluded that an aider and abettor may be guilty of a greater offense than the perpetrator (*McCoy*) or a lesser offense (*Nero*, and *People v. Samaniego* (2009) 172 Cal.App.4th 1148). In response to this line of cases, CALCRIM No. 400 was revised to eliminate language stating that "[a] person is [equally] guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator [who committed it]. . . . " (*People v. Loza* (2012) 207 Cal.App.4th 332, 348, fn. 8.) The jury in this case was given the revised version of CALCRIM No. 400.

Respondent argues that the issue was not preserved for appeal because defense counsel did not seek modification or clarification of the intent element of the pattern instruction on aiding and abetting. "'A party may not argue on appeal that an instruction correct in law was too general or incomplete, and thus needed clarification, without first requesting such clarification at trial.' [Citation.]" (*People v. Livingston* (2012) 53 Cal.4th 1145, 1165.)

We agree that appellant failed to preserve the issue for appeal because no request for clarification or modification of the language describing the aider and abettor's required intent was made. But even had the issue been preserved, we would find no error because the instruction as given correctly stated the law on aider and abettor liability.

Appellant argues that "[o]ne does not become an aider and abettor simply by being in a place where a crime is being committed, even if that person knows about the crime, and does nothing to stop it." The jury was correctly instructed under the third element in CALCRIM No. 401 that to convict, it was required to find that the defendant had to intend "to aid and abet the perpetrator in committing the crime." This is a correct statement of California law. "An aider and abettor . . . must 'act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' (*People v. Beeman*[, *supra*,]

8

35 Cal.3d [at p.] 560.)" (*People v. Mendoza, supra,* 18 Cal.4th at p. 1123.) "In order for aiding and abetting liability to attach, the intent to render aid must be formed prior to or during commission of the offense. (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164.)" (*People v. Hernandez* (2010) 181 Cal.App.4th 1494, 1502.)

A similar argument was rejected in *People v. Stallworth* (2008) 164 Cal.App.4th 1079 (*Stallworth*), in which the appellant contended that CALCRIM No. 401 did not explicitly state that mere presence or mere knowledge is insufficient to establish aiding and abetting. The *Stallworth* court concluded that the language of CALCRIM No. 401 "demonstrates otherwise." (*Id.* at p. 1103.) It reasoned: "CALCRIM No. 401 clearly provides that knowledge that the perpetrator intends to commit the crime is only one of the four elements for aiding and abetting liability. If the jury found mere knowledge alone, by the terms of CALCRIM No. 401, that would be insufficient to establish aiding and abetting liability. This point is even emphasized by the portion of the instruction that reads as follows: 'Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.' (CALCRIM No. 401.)" (*Ibid.*, italics omitted.)

As in *Stallworth*, we conclude that CALCRIM No. 401 clearly and correctly informed the jury that it was required to find that appellant acted with the intent to aid, facilitate, promote, encourage, or instigate Pablo's theft of the victims' property. There was no error in the instruction on aiding and abetting.

II

Appellant also challenges the sufficiency of the instruction on the defense of duress, arguing that it should have stated that his fear of great bodily injury is a sufficient evidentiary basis for the defense.

Section 26 enumerates circumstances in which a person is not capable of committing a crime. Subdivision six codifies the defense of duress: "Persons (unless the crime be punishable with death) who committed the act or made the omission charged

9

under threats or menaces sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused."

During the colloquy on jury instructions, the trial court proposed giving CALCRIM No. 3402, the pattern instruction on duress: "The defendant is not guilty of grand theft if he acted under duress. The defendant acted under duress if, because of threat or menace, he believed that his life would be in immediate danger if he refused a demand or request to commit the crime. The demand or request may have been express or implied. [¶] The defendant's belief that his life was in immediate danger must have been reasonable. When deciding whether the defendant's belief was reasonable, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in the same position as the defendant would have believed. [¶] A threat of future harm is not sufficient; the danger to life must have been immediate. [¶] The People must prove beyond a reasonable doubt that the defendant did not act under duress. If the People have not met this burden, you must find the defendant not guilty of grand theft."

Neither counsel commented on that instruction. The court then considered a special instruction proposed by the prosecution: "Under the duress defense, the immediacy requirement means that the person committing the crime has only the choice of imminent death or executing the requested crime. The person being threatened has no time to formulate what is a reasonable and viable course of conduct nor to formulate criminal intent." Defense counsel argued that duress does not require fear of being killed. The trial court acknowledged that it thought the same, but cited section 26, which requires fear for life to trigger the duress defense. Defense counsel said "I misunderstood. I confused myself, yes." The trial court then ruled that the special instruction would be given.

10

The court then noted that the pattern instruction on the defense of necessity, CALCRIM No. 3403,[6] had not been requested, and asked whether defense counsel wanted it given. Defense counsel requested the instruction. The prosecutor objected to language identifying the lack of an adequate legal alternative as one element of the necessity defense. The court noted that unlike the defense of duress, which must be disproven by the prosecution, the defendant bears the burden of proof on the defense of necessity. The court ruled that it would give the necessity instruction.

Appellant's argument is based on a long-standing split of California authority about the nature of the fear required to establish the duress defense. In *People v. Heath* (1989) 207 Cal.App.3d 892, the court explained that common law duress "was said to excuse criminal conduct where the actor was under an unlawful threat of imminent death *or serious bodily injury*, which threat caused the actor to engage in conduct violating the literal terms of the criminal law." (*Id*. at p. 899, italics added.) Appellant acknowledges that fear of serious bodily injury is not included in section 26, subdivision six, but asserts that it should be implied, citing *People v. Otis* (1959) 174 Cal.App.2d 119, which discussed the split of authority and questioned whether the legal distinctions between fear of serious bodily harm and fear of life itself remained viable in light of modern psychological research. (*Id*. at pp. 124-125.)

---

[6] As given, CALCRIM No. 3403 provided: "The defendant is not guilty of Grand Theft if he acted because of legal necessity. [¶] In order to establish this defense, the defendant must prove that: [¶] 1. He acted in an emergency to prevent a significant bodily harm or evil to (himself/herself/ [or] someone else); [¶] 2. He had no adequate legal alternative; [¶] 3. The defendant's acts did not create a greater danger than the one avoided; [¶] 4. When the defendant acted, he actually believed that the act was necessary to prevent the threatened harm or evil; [¶] 5. A reasonable person would also have believed that the act was necessary under the circumstances; [¶] AND [¶] 6. The defendant did not substantially contribute to the emergency. [¶] The defendant has the burden of proving this defense by a preponderance of the evidence. This is a different standard of proof than proof beyond a reasonable doubt. To meet the burden of proof by a preponderance of the evidence, the defendant must prove that it is more likely than not that each of the six listed items is true."

The other line of cases requires that a defendant be in imminent fear for his or her life based on the express language of section 26, subdivision six. (*People v. Saavedra* (2007) 156 Cal.App.4th 561, 567; *People v. Petznick* (2003) 114 Cal.App.4th 663, 676-677; *People v. Condley* (1977) 69 Cal.App.3d 999, 1012.) In *People v. Subielski* (1985) 169 Cal.App.3d 563, the court rejected an argument that an instruction on duress was required sua sponte where there was no evidence that the defendant "ever believed--reasonably or unreasonably--that his *life* was in danger, but only feared that he might be subjected to a physical beating if he did not participate in the robbery." (*Id*. at p. 567.) ~(italics in original)~

As respondent suggests, we need not resolve this split of authority because the evidence did not establish that appellant assisted Pablo out of a fear of *immediate* harm. "'The common characteristic of all the decisions upholding [a duress defense] lies in the immediacy and imminency of the threatened action: each represents the situation of a present and active aggressor threatening immediate danger; none depict a phantasmagoria of future harm.'" (*People v. Vieira* (2005) 35 Cal.4th 264, 290, quoting *People v. Otis, supra,* 174 Cal.App.2d at p. 125; see also *People v. Petznick*, *supra*, 114 Cal.App.4th at pp. 676-677.)

The evidence at trial of appellant's admissions and his own testimony establish that Pablo threatened appellant with a *future* beating when his relatives or friends arrived. Thomas testified that everyone was amused when Pablo said he would go get a gun from his car because he had told them that he arrived by taxicab. Thomas heard Pablo say "he would call his friends and have his friends assist him in coming to hurt us . . . ." Appellant told Vanoost that Pablo threatened that he was going to go home and get a gun and bring his cousin back and harm the victims' dog if he did not get paid for what was missing. Detective Hogan testified that appellant told him that Pablo said he was going to get unknown males and then come back and physically harm him. Appellant testified that Pablo threatened him with a severe beating, but explained that Pablo said "he would pistol whip all three of us, including clean the place out, when the brother got there to

12

pick him up." Appellant knew that Pablo's brother was not present when this statement was made. He testified that while Pablo removed the property, he was in fear of receiving a severe beating but did not indicate whether this was because Pablo said he would return with others to beat him. Appellant testified that he spent 15 minutes trying to talk Pablo out of stealing from the victims.

This evidence does not support a duress defense because appellant's testimony, even if credited, did not demonstrate that he acted out of a fear of immediate harm rather than some future harm, whether it was of death or serious bodily injury. The court had no sua sponte duty to instruct the jury as appellant suggests.

III

Appellant argues that his defense counsel failed to object to the duress and aiding and abetting jury instructions. (*Strickland v. Washington* (1984) 466 U.S. 668, 685; *People v. Ledesma* (1987) 43 Cal.3d 171, 215-218.) In light of our conclusion that there was no instructional error, we do not find ineffective assistance of counsel. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 108; *People v. Orlosky* (2015) 233 Cal.App.4th 257, 275.)

DISPOSITION

The judgment of conviction is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**



                                                        EPSTEIN, P. J.


We concur:



WILLHITE, J.                                        COLLINS, J.

13